UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARK J. BROOKS,

    Plaintiff,

    v.

TOWN OF CHESTER, et al.,

    Defendants.

Civil Action No. 24-30023-MGM

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT AND DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S AMENDED COMPLAINT
(Dkt. Nos. 28 & 39)

September 23, 2025
Corrected October 14, 2025

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Plaintiff, Mark J. Brooks, proceeding pro se, filed this action in state court against the Town

of Chester ("Chester"); members of the Chester Board of Selectmen, John Baldassaro, Richard Sutton,

and Brian Forgue; Chair of the Chester Board of Health, Nicholas J. Chiusano; the former Chester

Administrator, Katherine Warden; and the Town of Worthington ("Worthington") Administrator,

Margaret O'Neil (collectively "Defendants"). Plaintiff asserts various claims under Massachusetts and

federal law against Defendants, all arising from disputes about maintenance of certain roads during

the winter. Plaintiff resides at 148 Lindsey Hill Road in Worthington (the "Worthington Property"),

and also owns a property located at 69 Smith Road in Chester (the "Chester Property"). Historically,

both Chester and Worthington have closed certain roads or portions of roads during the winter

months, rather than keep them clear of snow and ice. The closures have included a portion of Smith

Road used to access the Chester Property and extending to the Worthington line and a portion of

Patterson Road, the continuation of Smith Road in Worthington. The lack of winter maintenance on

those sections of road has been a source of conflict between Plaintiff and the towns for decades. This

is one of three cases currently pending in this court related to the long-running dispute.

Plaintiff filed this action in the Land Court Department of the Massachusetts Trial Court on

December 13, 2023. Defendants, invoking federal question jurisdiction, removed to this court in early

2024. Plaintiff unsuccessfully sought remand, and Defendants filed a motion to dismiss for failure to

state a claim. The court granted Plaintiff additional time to respond to the motion to dismiss. Rather

than file an opposition, he sought leave to file an amended complaint. The court granted the motion

and found Defendants' motion to dismiss moot. Plaintiff filed his Amended Complaint (Dkt. No. 22)

and Defendants filed a second motion to dismiss (Dkt. No. 28). After receiving multiple extensions

of time to file his opposition, Plaintiff instead elected to file a motion for leave to file a second

amended complaint. He argued his proposed Second Amended Complaint ("SAC") would "cure

many deficiencies in the complaint" by including references to a letter from the Massachusetts Office

of the Attorney General, adding a reference to the Massachusetts Civil Rights Act, and adding new

facts regarding actions taken by the Chester Board of Selectmen in November 2024. (Mot. for Leave

to File Sec. Am. Compl., Dkt. No. 39, 2.) Defendants opposed the motion (Dkt. No. 45), arguing the

SAC would be futile because it did not remedy shortcomings previously identified in Defendants'

pending motion to dismiss. Plaintiff filed a twenty-four-page reply (Dkt. No. 48) in which he addressed

the arguments raised in Defendants' opposition to his motion for leave to file a second amended

complaint and those raised in Defendants' pending motion to dismiss. For the reasons explained

below, the court will deny Plaintiff's motion for leave to file a second amended complaint. The court

will also grant Defendants' motion to dismiss Plaintiff's first amended complaint as to the federal claims and remand the remaining court claims to state court.

## II.    MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading as a matter of course, once, within certain time limits. Leave for a subsequent amended complaint "shall be freely given when justice so requires," but not where the amendment would be futile. *Adorno v. Crowley Towing and Transp. Co.*, 443 F.3d 122, 126 (1st Cir. 2006) (quoting Fed. R. Civ. P. 15(a)). "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)" *Id.* Pursuant to that standard, the court must dismiss any counts that fail to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). "While a district court is generally limited to considering facts and documents that are part of the complaint, it may also consider documents incorporated by reference in the complaint, matters of public record, and other matters susceptible to judicial notice." *Newton Covenant Church v. Great Am. Ins. Co.*, 956 F.3d 32, 35 (1st Cir. 2020) (internal quotations and alterations omitted). Dismissal is appropriate for any claim if the factual allegations cannot support one or more "material element[s] necessary to sustain recovery under some actionable legal theory." *N.R. by and through S.R. v. Raytheon Co.,* 24 F.4th 740, 746 (1st Cir. 2022) (internal quotations omitted). This includes any claim that is untimely on its face. *Gorelik v. Costin*, 605 F.3d 118, 121 (1st Cir. 2010) (affirming dismissal "when the pleader's allegations 'leave no doubt that an asserted claim is time-barred,'" as occurred when plaintiff

alleged harms caused by discrete actions taken years before the limitations period (quoting *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 509 (1st Cir. 1998)).

### III.   SPECIAL CONSIDERATIONS APPLICABLE TO COMPLAINTS FILED BY PRO SE PLAINTIFFS

"Our judicial system zealously guards the attempts of pro se litigants on their own behalf." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Recognizing the difficulties pro se plaintiffs face, the courts construe pro se complaints liberally. *Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 75 (1st Cir. 2014). "However, pro se status does not insulate a party from complying with procedural and substantive law." *Ahmed*, 118 F.3d at 890. Like other plaintiffs, "even a pro se plaintiff is required 'to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Adams v. Stephenson*, 116 F.3d 464 (1st Cir. 1997) (unpublished table decision) (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988)). Holding all plaintiffs, including pro se plaintiffs, to this standard is necessary to ensure every defendant is "afforded both adequate notice of any claims asserted against him and a meaningful opportunity to mount a defense." *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (internal quotations omitted).

### IV.   BACKGROUND[1]

Plaintiff has owned the Chester Property since 1989. There were two structures when Plaintiff purchased the Chester Property, a main house and a secondary cottage, both originally built around

---

[1] Consistent with the applicable plausibility standard, the court includes Plaintiff's factual allegations, concerning who did what and when, but generally omits conclusory allegations concerning the legal significance of those actions *A.G. ex rel. Maddox v. Elsevier, Inc.*, 732 F.3d 77, 80 (1st Cir. 2013) ("[T]he Court 'must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012))). Factual allegations related to events occurring many years before Plaintiff filed his complaint are largely omitted because any claims based on those events are barred by the applicable, three-year statute of limitations. The court also takes judicial notice of some facts included in the Amended Complaint filed by Plaintiff in *Brooks v. Worthington* (24-cv-30024, Dkt. No. 18) and set forth in judicial decisions or Plaintiff's filings in prior state court litigation (Dkt. No. 31).

1938. The Chester Property is accessed from Smith Road in Chester. Smith Road becomes Patterson Road when it crosses the nearby town line from Chester into Worthington. The main dwelling was damaged by a fire in 1995, and Plaintiff moved into the secondary cottage. In 1996, Plaintiff hired an engineer to assess the septic system and access to potable water. The engineer's report stated the Chester Property had a septic system that met legal requirements (Title V) and access to potable water through a private well. Also in 1996, Plaintiff was informed by the Chester Building Commissioner and Board of Health that the dwelling on the Property had been constructed without the proper permits. The following year, Plaintiff built the house at the Worthington Property on Lindsey Hill Road, which continues to be his primary residence.

For many years, Chester and Worthington, acting through their select boards, have closed the sections of Smith Road and Patterson Road closest to the Chester Property for approximately half of each year, rather than maintain the unpaved road during the winter months. Plaintiff challenged the lack of winter road maintenance on several occasions between 1989 and 2021. He was not able to obtain a lasting resolution and continued having difficulties accessing the Chester Property during the winter.

In 2021, Plaintiff again requested Chester and Worthington provide winter maintenance on the portions of Smith Road and Patterson Road used to access the Chester Property. Plaintiff encouraged individuals employed by Comcast, Verizon, the Massachusetts Inspector General's Office, and Chester's own town counsel to contact Katherine Warden, the Chester Administrator, and inquire why that portion of Smith Road was not being plowed in the winter. In Worthington, the Selectboard had questions about the Chester Property and the winter maintenance done by Chester on the portion of Smith Road just past the Worthington line. Plaintiff sought to establish that the Chester Property has a legal dwelling by sending O'Neil, the Worthington Administrator, a copy of the 1996 engineer's report stating there was a legal septic system and potable water on the Chester Property. The

Selectboard in Worthington also requested information directly from Chester about the Chester

Property and Chester's winter maintenance on Smith Road. On November 22, 2021, Warden

responded by letter, writing:

> The Town of Chester does winter maintenance on Smith Rd for only approximately
> .30 miles. The Town ends the winter maintenance at Captain Bemis Road. This has
> been the practice for many years. Mr. Mark Brook [sic] who is continually requesting
> access because he claims he has a home at 69 Smith Rd. There is no legally habitable
> dwelling at 69 Smith Rd. Please see the attached letters from Chester Board of Health
> and the Chester Building Inspector.

(Prop. Sec. Am. Compl., Dkt. No. 39-1, Ex. 2.) The letter from the Chester Board of Health stated

the Board "has no known legally habitable dwelling at 69 Smith Road," and was signed by Chiusano.

(*Id.*) The letter from the Chester Building Inspector stated "the building commissioner's office in

Chester has no records of and permits or a certificate of occupancy being issued for the property

known as 69 Smith Rd[.]" (*Id.*) A short time later, the Worthington Selectboard voted to close the

section of Patterson Road just before the Chester town line during the winter. An article about the

decision appeared in the Country Journal Newspaper and included quotations from a member of the

Worthington Selectboard, who described the letters sent by Chester officials as stating that there is no

"lawfully occupiable dwelling" on Plaintiff's Chester Property. (*Id.* at Ex. 3.)

Approximately eighteen months later, Plaintiff sent Chester, and a group of individuals that

includes most of the individual defendants in this action, a lengthy letter outlining his intent to assert

legal claims based on (1) the 2021 communications by Chester officials stating Plaintiff lacked a legal

dwelling at the Chester Property, and (2) Chester's failure to provide winter maintenance on the

portion of Smith Road running past the Chester Property. On October 16, 2023, and again on

November 18, 2024, the Chester Board of Selectmen approved the winter closure of a one-mile

portion of Smith Road, beginning after the last dwelling of a "primary resident" and continuing to the

Worthington line. There are other unpaved roads in Chester that are maintained in the winter past the

last primary resident's dwelling. Plaintiff filed several complaints about the winter road closure with

the Massachusetts Attorney General. By letters dated August 7, 2019, June 1, 2022, and March 7, 2024, various sections within the Attorney General's office declined to take further action on his complaints. On October 16, 2023 and November 18, 2024, the Chester Board of Selectmen again voted to close Smith Road for the winter.

## V.    DISCUSSION

Plaintiff's SAC includes eight counts, five are brought pursuant to federal law and the remaining three claims are brought pursuant to state law. As this court's jurisdiction derives from the federal claims, the court turns to those first. Plaintiff claims the letters sent to Worthington in November 2021 and the Board of Selectmen's 2023 and 2024 decisions to temporarily close the disputed portion of Smith Road during the winter (1) are actionable under 42 U.S.C. § 1983 because they violated his rights to due process and equal protection under the Fourteenth Amendment (Counts IV and V) and constituted retaliation against him following an exercise of his First Amendment right to petition (Count VI), (2) involved a civil conspiracy to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985 (Count VII), and (3) deprived him of equal access to public facilities in violation of Title II of the Civil Rights Act, 42 U.S.C. § 2000a (Count VIII).

A.  42 U.S.C. § 1983

"Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Borrás-Borrero v. Corporácion del Fondo del Seguro del Estado*, 958 F.3d 26, 35 (1st Cir. 2020) (internal quotations omitted). "A claim for relief under section 1983 requires a showing of two elements—first, that the plaintiff was deprived of either a federal constitutional or statutory right, and, second, that the deprivation was carried out by a defendant acting under color of state law." *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 4 (1st Cir. 2012). Plaintiff invokes his federally protected rights to due process, equal protection, and the right to petition. As Defendants do not contest Plaintiff's assertions that they were "state actors" for purposes of § 1983, the court's

assessment focuses on whether Plaintiff has plausibly alleged a deprivation of a constitutional or statutory right.

Claims brought pursuant to § 1983 are subject to the statute of limitation period for personal injury actions in the state where the claim is brought. *Nieves v. McSweeney*, 241 F.3d 46, 51 (1st Cir. 2001). Under Massachusetts law, "actions . . . to recover for personal injuries . . . shall be commenced only within three years next after the cause of action accrues." Mass. Gen. Laws c. 260, § 2A. "[T]he accrual date for a § 1983 action is simply the date when the potential plaintiff knew or should have known that she was harmed." *Cao v. Puerto Rico*, 525 F.3d 112, 115 (1st Cir. 2008). As Plaintiff filed this action on or about January 22, 2024, claims based on injuries Plaintiff incurred prior to January 2021 are time-barred.

    i.    Due Process

The Due Process Clause of the Fourteenth Amendment provides both procedural and substantive protections. *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006). Procedural protections require the government to use fair procedures in dealings with private persons. *Harron v. Town of Franklin*, 660 F.3d 531, 535 (1st Cir. 2011). The substantive component of due process "'safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them.'" *Id.* (quoting *DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005)). The SAC does not distinguish between the two types of due process violations. After assessing both types of claims, the court concludes Plaintiff's SAC does not plausibly allege a violation of either component of due process.

    a.    Procedural Due Process

The court evaluates "'procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"

*Harron*, 660 F.3d at 537 (quoting *González-Fuentes v. Molina*, 607 F.3d 864, 886 (1st Cir. 2010)). As to the first part of the inquiry, Plaintiff contends Defendants actions denied him access to his property during winter months, thereby interfering with his interest in the Property.[2] However, the Plaintiff has not plausibly alleged that Defendants' actions interfered with any interest Plaintiff actually possessed. "[P]roperty interests are defined by state law." *Id.* Massachusetts law imposes a duty on municipalities to maintain public roads in a safe condition during all seasons, but does not recognize a right of abutters to compel a municipality to maintain a road.[3] *See Fratus v. Town of Harwich*, 175 N.E.3d 401, 404 (Mass. App. Ct. 2021) (citing Mass. Gen. Laws c. 84, § 1). Plaintiff not only lacked an enforceable right to winter maintenance, he had known for many years that Chester and Worthington had long-standing practices of closing the disputed sections of road during the winter. Whatever harms Plaintiff has suffered due to the seasonal road closures have been known to Plaintiff for more than thirty years, rendering untimely any claims arising from the practice.

### b. Substantive Due Process

"To adequately plead a substantive due process claim, a plaintiff must allege a deprivation of a protected interest in life, liberty, or property." *3137, LLC v. Town of Harwich*, 126 F.4th 1, 11 (1st Cir. 2025) (internal quotations omitted). "Substantive due process protects only those interests that implicate one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty

---

[2] When conclusory allegations are disregarded, the SAC does not allege Chester officials took any actions to condemn the Chester Property or prohibit Plaintiff from accessing the Chester Property around the time Chester officials sent letters to Worthington stating that Chester records showed no legally habitable dwelling on the Chester Property. Additionally, the 1996 report regarding the septic system and potable water at the Chester Property does not, by itself, support an inference that Chester had previously recognized the existence of a "legally habitable" dwelling on the Chester Property and records from cases Plaintiff previously litigated in state court are inconsistent with such an assumption.

[3] A municipality that fails to maintain and repair public ways is liable to "persons sustaining personal injuries or property damage from defects in the ways" and may also be fined by the Commonwealth "for failure to maintain the road." *Dus v. Town of Hancock*, 95 N.E.3d 300 (Mass. App. Ct. 2017) (unpublished) (citing *Sturdy v. Planning Bd. of Hingham*, 586 N.E.2d 11, 14 (Mass. App. Ct. 1992) and Mass. Gen. Laws c. 84, §§ 15, 22).

nor justice would exist if they were sacrificed.'" *González-Fuentes v. Molina*, 607 F.3d 864, 880 n.13 (1st Cir. 2010) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997)). As explained above, state law defines the scope of property interests, and Massachusetts does not grant owners of real property the right to compel a town to maintain public roads abutting the property. *Fratus*, 175 N.E.3d at 404. As a result, Plaintiff's right to substantive due process is not violated by the continuation of a town's long-standing policy of not maintaining select stretches of unpaved roads during the winter.

ii.    Equal Protection

"Under the Equal Protection Clause, persons similarly situated must be accorded similar governmental treatment." *Marrero-Gutierrez v. Molina*, 491 F.3d 1, 9 (1st Cir. 2007) A plaintiff can plausibly plead an equal protection claim by alleging facts demonstrating he (1) was selectively treated because of his membership in a particular class or group, or (2) is a "class of one" who was intentionally, and without rational basis, treated differently from others who were similarly situated. *Back Beach Neighbors Comm. v. Town of Rockport*, 63 F.4th 126, 130 (1st Cir. 2023). Plaintiff has not alleged that he is a member of a protected class or group. He also has not plausibly alleged similarly situated comparators exist or that Defendants lacked rational reasons for their actions. Plaintiff has alleged only that there are "other similarly situated secondary residents" of Chester with addresses on dirt roads that are maintained during the winter. (SAC, Dkt. No. 39, ¶ 81.) Once the court disregards the conclusory description of the other secondary residents as "similarly situated" to Plaintiff, all that remains are cursory allegations that Chester provides winter maintenance on some unpaved roads where secondary residents live, but not the stretch of Smith Road near the Chester Property. Plaintiff has not included any additional information about the properties owned by other secondary residents, such as their proximity to intersections, town borders, and areas where maintenance vehicles can safely turn around, or the qualities of those other roads, such as width, grade, and surface condition. Without more specific facts, the court cannot plausibly infer that other secondary residents were, in fact,

similarly situated to Plaintiff, or that Defendants lacked a rational basis for decisions regarding which stretches of unpaved roads to maintain, and which to temporarily close during the winter. *See Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (dismissing equal protection claims based on disparate treatment of landowner by municipal officials where the plaintiff failed to allege sufficient facts to demonstrate owners of nearby parcels were similarly situated).

### iii. First Amendment Retaliation

Plaintiff also alleged Defendants took actions in retaliation against him after he exercised his First Amendment right to petition a government entity. Specifically, he has alleged he petitioned Chester and Worthington to maintain Smith Road and Patterson Road during the winter, and Defendants retaliated by informing Worthington that Chester did not have any record of a legally habitable dwelling on the Chester Property. Plaintiff contends the statements were "fabricated," but he has not alleged any facts that plausibly support that conclusory assertion. His reliance on the 1996 report regarding the septic system and potable water at the Chester Property is insufficient to support an inference that Chester had previously recognized a legally habitable dwelling on the Chester Property. Such a position also appears inconsistent with the prior litigation in state court.

### B. 42 U.S.C. § 1985

"To plead an actionable claim under [42 U.S.C. § 1985(3)], [a plaintiff] must allege the existence of a conspiracy, allege that the purpose of the conspiracy is 'to deprive the plaintiff of the equal protection of the laws,' describe at least one overt act in furtherance of the conspiracy, and 'show either injury to person or property, or a deprivation of a constitutionally protected right.'" *Alston v. Spiegel*, 988 F.3d 564, 577 (1st Cir. 2021) (quoting *Pérez-Sánchez v. Pub. Bldg. Auth.*, 531 F.3d 104, 107 (1st Cir. 2008)). "Pleading a section 1985(3) conspiracy 'requires at least minimum factual support of the existence of a conspiracy.'" *Parker v. Landry*, 935 F.3d 9, 18 (1st Cir. 2019) (quoting *Francis-Sobel v. Univ. of Me.*, 597 F.2d 15, 17 (1st Cir. 1979)). "Vague and conclusory allegations about persons

11

working together, with scant specifics as to the nature of their joint effort or the formation of their agreement, will not suffice to defeat a motion to dismiss." *Alston*, 988 F.3d at 578. In his SAC, Plaintiff alleged specific actions taken by each of the individual defendants and explained how the actions combined to bring about a particular result, but when his conclusory allegations are stripped away, there are no facts from which an agreement can be reasonably inferred. *Id.* (finding plaintiff, who "d[id] not allege any contact or conversation" between two town officials who both circulated a specific letter, failed to do more than establish that it was "within the realm of possibility that [the two officials] collaborated"). While Plaintiff "is entitled to have reasonable inferences drawn in his favor, . . . he is not entitled to the benefit of speculation unanchored to sufficiently supportive facts." *Id.*

C.   42 U.S.C. § 2000a

Plaintiff's factual allegations are also insufficient to state a claim for discrimination in a place of public accommodation. Section 2000a prohibits discrimination on the basis of race, color, religion, or national origin in a defined set of places of public accommodation. 42 U.S.C. § 2000a(a). Although Plaintiff has plausibly alleged that he, alone, was adversely impacted by Defendants actions, he has not alleged any facts from which the court can plausibly infer Defendants' actions were motivated by Plaintiff's race, color, religion, or national origin. Additionally, Smith Road is not a physical premises where members of the public may go to procure "goods, services, facilities, privileges, advantages, and accommodations" and, therefore, is not a place of public accommodation as that term is defined in the statute. *Id.*

D.   State Claims

"[A] district court has discretion to decline to exercise supplemental jurisdiction after dismissing 'all claims over which it ha[d] original jurisdiction.'" *Uphoff Figueroa v. Alejandro,* 597 F.3d 423, 431 n.10 (1st Cir. 2010) (quoting 28 U.S.C. § 1367(c)(3)). Having found all of Plaintiff's federal claims fail to state a claim upon which relief can be granted, the court declines to exercise its

supplemental jurisdiction over the remaining state law claims. *See Meuse v. Pane,* 322 F.Supp.2d 36, 39 (D.Mass.2004) ("Having dismissed [the plaintiff's] federal claims against [the defendant], this Court declines to exercise supplemental jurisdiction over [the plaintiff's] state law claims against [the defendant]."); *see also United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

## VI.    CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. No. 39) is DENIED and Defendant's Motion to Dismiss (Dkt. No. 28) is ALLOWED as to Counts III through VI of Plaintiff's Amended Verified Complaint (Dkt. No. 22).. Having dismissed all the claims arising under federal law, the court also exercises its discretion to remand Counts I and II to state court. The clerk should enter judgment for Defendants as to Plaintiff's federal claims and remand the remaining claims to state court. The case may then be closed.

It is so Ordered.

 /s/ Mark G. Mastroianni          
MARK G. MASTROIANNI
United States District Judge